John J. Dillon, J.
The plaintiff sues for damages for personal injuries sustained on August 4, 1958, when during the process of mounting a new tire on the wheel of a customer’s car the tire blew off the mounting machine and struck him violently in the head and chest. The defendants are the manufacturer of the tire and the retail dealer who had sold the tire to the plaintiff’s customer on the day of the accident. The plaintiff claims that the accident was caused by a defect in the tire. The complaint originally alleged four causes of action, two against each defendant. The defendant United States Rubber Company was charged with negligence in the first cause of action and with breach of warranty in the second. The second cause of action was dismissed on motion prior to the trial (17 Misc 2d 201, affd. 10 A D 2d 978). The defendant Tire Masters, Inc., was charged in the third cause of action with a breach of implied warranty, and in the fourth cause of action with a breach of a special warranty contained in the contract between the parties. The fourth cause of action was dismissed during the trial for failure of proof. During the pendency of the action the assignee for the benefit of creditors of Tire Masters, Inc., was allowed to intervene as a party. Tire Masters, Inc., has also interposed a cross complaint against the manufacturer for breach of warranty.
All parties stipulated to waive a jury. The court directed that the proof be limited to the issue of liability with the under *686 standing that if either or both defendants should be held liable the proof of damages would be taken later. The issues to be determined are those raised by the first cause of action against United States Rubber Company based on negligence, and the third cause of action against Tire Masters, Inc., based on breach of warranty.
At the time of the accident, Tire Masters, Inc., was a retail dealer engaged in the sale of new automobile tires in Cimbel’s Department Store in Yonkers, New York. The plaintiff owned and operated a service station in the immediate vicinity. Some months before the accident, Tire Masters, Inc., entered into an arrangement with the plaintiff for the mounting of tires purchased at its store. Under this arrangement the purchaser of a new tire could drive his car to the plaintiff’s place of business, present a slip from the dealer, and have the tire mounted on his car. The plaintiff retained a portion of the slip and upon presentation thereof to Tire Masters, Inc., was entitled to be paid 75 cents for each tire so mounted. The plaintiff testified that between April and August, 1958, he had mounted from 700 to 1,000 tires per week for Tire Masters, Inc., in accordance with this arrangement.
On the day of the accident a customer driving a 1955 Plymouth car with Florida license plates bought two new tires and two tubes from Tire Masters, Inc. The tires were sold under the name of “ Gillette Super De Luxe Nilón” tires, a product of the defendant United States Rubber Company. The purchaser then drove his car to the plaintiff’s service station to have them mounted. The work of demounting the old tire and putting on the new one was- performed on a manually-operated machine known as a 11 Coates Iron Tire-man,” on which the wheel was placed in a horizontal position on a metal platform. The entire process was described and demonstrated by the plaintiff at the trial and need not be repeated in detail. It is sufficient to say that normal operation requires that in mounting the new tire the operator should first apply a tire-lubricant to the inside of what is known as'the “ bead,” put the tire around the wheel on the platform with the valve side upward, insert the partially-inflated tube in the tire, apply the air hose to the valve and increase the pressure in the tube until the tire is firmly seated on the wheel.
In the present case there is a dispute in the evidence as to what was done and who did it. The plaintiff testified that he personally handled the entire job from the time the customer drove in to the time of the accident. He testified that in mounting the new tire he set the pressure on the air-tower at *687 30 pounds; that he followed the procedure outlined above; that he applied the air-chuck to the valve, and after 15 or 20 seconds heard the bead set against the rim but noticed that a part of the bead was not completely set; and that almost immediately thereafter there was a loud noise and he jumped back but too late to avoid being struck by the tire as it shot from the machine. The plaintiff’s testimony was at least partially corroborated by two other witnesses named Yessecchia and Gnerri, employees of the plaintiff. Another employee named Benjamin Craven gave a totally different version of the occurrence, in which he was corroborated by his son William. But the elder Craven was so seriously impeached that his entire testimony became suspect, and the testimony of the boy must be evaluated in the light of the fact that he was only 12 years old at the time of the accident and was testifying more than 5 years later. On all the evidence the court finds that the plaintiff handled the whole operation of removing the wheels from the car, demounting the old tire and mounting the new one. This does not mean, however, that the plaintiff must necessarily be believed in saying that the air pressure had been set at 30 pounds.
The negligence action against the manufacturer will be discussed first. This is not a res ipso loquitur case, and it Avas not tried by the plaintiff on that theory. The plaintiff had the burden of proving in the first instance that the accident Avas proximately caused by negligence in the manufacture of the article and of disproving contributory negligence. The plaintiff claims specifically that the tire exploded because the 11 bead ’5 on the lower side of the tire as it lay on the machine gave way and left the tube unprotected against the air pressure. The bead is a circular bundle of wires imbedded in the rubber at the point where the tire is held on the wheel. There is no doubt that in this case the bead on one side of the tire was found to be broken after the explosion, but what caused it to break is a matter of dispute.
The plaintiff called two expert witnesses. One of them, a consulting engineer named Mantell, testified that he had taken four of the bead wires from the tire in question and tested them for tensile strength. He said that he found all of them deficient in tensile strength and expressed the opinion that this defect caused the breaking of the bead and the explosion of the tire. The plaintiff’s other expert was a consulting engineer named Stewart. He testified that he had assumed that the bead Avires were of proper tensile strength, and was of the opinion that the bead broke because of the absence of flexible rubber cushioning and the misplacement of the chafer-fabric in the bead area. *688 Thus each of the plaintiff’s experts had an explanation — although the second witness seemed to contradict the first — for the breaking of the bead. But in retrospect it becomes noticeable that neither one of them testified to any experience, or any experiments, which would lead to the conclusion that the mere breaking of the bead during the mounting process, at a pressure of 30 pounds, would cause such a violent explosion of the tire as occurred here. The evidence is that this tire, after striking the plaintiff, shot upwards about 15 feet shattering several panes of glass in an overhead door hanging parallel to the ceiling. Both of the plaintiff’s experts seem to have merely assumed that if the bead broke while the tire was being mounted a forcible explosion would occur.
The defendant manufacturer quite effectively refuted this assumption. The defendant called an expert witness named Briscoe who described himself as manager of road testing for the United States Tire & Rubber Co., a division of the United States Rubber Company. In 1958 this witness had been in charge of writing the specifications for all tires manufactured by his employer. He described the whole manufacturing process and disputed the testimony of the plaintiff’s witness Stewart as to the rubber cushioning and chafer-fabric in the vicinity of the bead. But the notable part of the testimony of this witness was that he described a series of experiments which he had made between 1958 and 1961 to determine the cause of the breaking of beads during the mounting process, and the effect of such occurrences upon the itire.. He used the same kind of tire and the same make of mounting machine as were used here. He also used the same Chrysler-Plymouth type wheel; and this is important because he admitted that his company had received some complaints about the difficulty of mounting tires on this type of wheel. This witness had made a number of experiments with tires on which the bead had already been broken. He found that at a pressure of 30 pounds, and with the tire mounted off-center, the tire would merely flip up on one side; that at 35 pounds it would rise 2 to 4 feet into the air; and that it required 70 pounds of pressure to cause the tire to mount 20 feet upwards. He had also made 60 to 70 tests with the beads previously unbroken and the tires seated normally on the machine, and found that in these cases there was no explosion until the pressure reached 150 pounds. Other experiments with unbroken beads, but with little or no lubrication on the sides of the tires and with the tires mounted off-center, produced a violent explosion at 72-110 pounds. And finally he found that if he cut one half of the wires in the bead with a hacksaw, and mounted *689 the tire in a normal manner, nothing happened np to 50 pounds pressure. On the basis of these experiments, Briscoe expressed the opinion that in the present case the cause of the accident was that the plaintiff had mounted the tire off-center and with insufficient lubrication. He was also of the opinion that even then the explosion could not have occurred at an air pressure of less than 70 pounds.
The testimony of the plaintiff’s two engineers really amounts to very little. Mantell’s opinion that the accident was caused by a deficiency of tensile strength in the bead wire was largely neutralized by his fellow-expert’s failure even to investigate for tensile strength. The defendants also called a witness named Hertzog, superintendent of quality control for the Colorado Fuel and Iron Co., which supplies bead wire to the United States Rubber Company, and apparently a well-qualified expert in metallurgy. He testified that Mantell had used the wrong method of testing for tensile strength and had compared his results with the wrong standard. Stewart’s belief that the absence of rubber cushioning and chafer-fabric in the bead area caused the accident was offset by the contrary testimony of Briscoe, whose qualifications in this field were certainly superior. But the fatal flaw in the testimony of both of plaintiff’s expert witnesses lay in their failure to demonstrate in any manner that the mere breaking of the bead, with the tire properly lubricated and properly mounted, would cause a violent explosion at the pressure testified to by the plaintff.
The experiments made by the witness Briscoe seem to the court to be decisive of this case. He was not successfully impeached, and his evidence was not overcome by any similar evidence to the contrary. The court therefore finds that this accident would not have happened unless the plaintiff had either given the tire insufficient lubrication, or mounted it off-center on the machine, or raised the air pressure to a dangerously high level, or done some combination of all three. The proof is insufficient to support the plaintiff’s claim that the bead broke because of a defect in the tire. On the contrary the weight of the evidence leads the court to the conclusion that the breaking of the bead was caused by one or more of the conditions just enumerated and consequently through the negligence of the plaintiff. The plaintiff has failed to prove that the tire was negligently manufactured, has failed to prove his own freedom from contributory negligence, and has failed to prove any fault on the part of the manufacturer which was the proximate cause of the accident.
*690 It follows that the complaint must be dismissed against United States Rubber Company. It follows also that the complaint must be dismissed against Tire Masters, Inc. Even if an action for breach of warranty will lie against a retail dealer on the part of a person other than the purchaser (which may he a moot point), the plaintiff’s failure to prove that the product was defective is fatal to the action. The cross complaint of Tire Masters, Inc., ■ against United States Rubber Company is dismissed as academic. The motions of both defendants for judgment in their favor against the plaintiff are granted. A judgment may be submitted accordingly.